George L. Hurlburt et al. v. Clinton R. Palmer, et al.

Filed February 6, 1894. No. 4832.

1. **Banks and Banking**: Drafts: Factors and Brokers. A shipper of hogs arranged with a firm of commission brokers that all his hogs as purchased should be consigned to said brokers for sale,; the said brokers on their part agreeing to pay such drafts as by the shipper should be made on them through a local bank, the proceeds of such drafts to be used by the shipper in making payments for hogs purchased, and to be consigned as the property of the shipper. *Held,* That the mere fact the said bank, without fraud or collusion, though with knowledge that the shipper was procuring funds with which to purchase hogs under this arrangement, induced the shipper to pay to itself a debt justly due it from him, he using for that purpose the proceeds of drafts drawn through the bank as above contemplated, did not render the bank liable to pay to the aforesaid firm of brokers the amount or value of property so received by it, whether in money, or in hogs purchased by the shipper.

2. **Jurisdiction of Courts**: Pleading: Summons. The plaintiffs in error, who were defendants in the trial court, answered, first, by a general denial qualified by certain admissions; second, that by an abuse of the criminal process of the state, a co-defendant had been taken from the jail of Seward county to Douglas county, wherein he was served with summons, after which he was returned at once to the Seward county jail ; that all the defendants were, at the commencement of the action, residents of Seward county, and that the aforesaid abuse of criminal process was resorted to by and on behalf of plaintiff solely to obtain in Douglas county jurisdiction of the persons of the answering defendants, notwithstanding their residence in Seward county. *Held,* (1) That the facts pleaded as to the jurisdiction of the district court of Douglas county, stated a substantive defense properly presented by answer; (2) that the second defense pleaded was not waived by reason of being included in the answer wherein had been stated the first defense ; (3) that such objections to the jurisdiction as do not arise upon the summons, the indorsement or service of the summons, or upon the face of the petition, must be raised by answer as a matter of defense.

3. Objection to Jurisdiction: WAIVER BY APPEAL. When the district court has not otherwise obtained jurisdiction of the person of a defendant, he does not submit himself to its jurisdiction by appealing or prosecuting error to this court; and the case of *Shawang v. Love*, 15 Neb., 142, holding the contrary doctrine, is overruled, as in contravention of the provisions of section 24, article 1, of the constitution of this state.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.

The facts are stated in the opinion.

*R. S. Norval* and *E. M. Bartlett,* for plaintiffs in error:

Where a person is taken or inveigled by force, fraud, or other means into the jurisdiction of the court for the purpose of getting service upon him, the service is bad and the court will acquire no jurisdiction. (*In re Robinson,* 29 Neb., 135; *Wyckoff v. Packard,* 20 Abb. N. Cas. [N. Y.], 420; *Compton v. Wilder,* 40 O. St., 130; *Van Horn v. Great Western Mfg. Co.,* 37 Kan., 52 ).)

An objection to the jurisdiction of the court over a defendant will not be waived, although such defendant answer to the jurisdiction as well as to the merits, when the practice permits a defense to the merits to be united with the plea to the jurisdiction. (*Cobbey v. Wright,* 29 Neb., 274; *Christian v. Williams,* 35 Mo. App., 297; *Allen v. Miller,* 11 O. St., 374.) ·

Unless the court acquires jurisdiction by reason of the subject-matter being situate within the county where the action is brought, the action must be commenced in the county in which the defendants or some one of them reside, or may be served with a summons. (*Cobbey v. Wright,* 29 Neb., 274; *Dunn v. Haines,* 17 Neb., 560.)

The plaintiffs below failing to take any judgment against the defendant Virgin, who only was served in Douglas county, and he having been taken into that county by force, fraud, and connivance for the purpose of serving the

summons on him there, the court could have no jurisdiction over the plaintiffs in error. (*Cobbey v. Wright*, 23 Neb., 250; *Dunn v. Hazlett*, 4 O. St., 436 ; *Allen v. Miller*, 11 O. St., 374.)

*Charles Offutt* and *Colman & Colman, contra:*

A defendant may appear specially to object to the jurisdiction of the court, either over his own person or the subject-matter of the suit, without waiving his right to be heard on the question on appeal or error. But if by motion, or any other form of application to the court, he seeks to bring its powers into action, except on the question of jurisdiction, he will be deemed to have appeared generally. Such an application concedes a cause over which the court has jurisdiction to act. (*Porter v. Chicago & N. W. R. Co.*, 1 Neb., 15 ; *Cropsey v. Wiggenhorn*, 3 Neb., 116 ; *Crowell v. Galloway*, 3 Neb., 220 ; *Aultman v. Steinan*, 8 Neb., 111 ; *Kane v. Union P. R. Co.*, 5 Neb., 106 ; *Hilton v. Bachman*, 24 Neb., 505 ; *Shawang v. Love*, 15 Neb., 142.)

Every dollar which Virgin obtained from Palmer, Richman & Co., which was not invested in stock and which was by him diverted to his personal use, was fraudulently obtained and fraudulently used, so far at least as Virgin was concerned. It is elementary that a person obtaining property by fraud acquires no title to it, but it is held by him, and by all persons claiming under him, with notice, in trust for the original owner. So long as the property can be identified in its original, or in a substituted form, it belongs to the original owner, if he elects to claim it; and if it passes into the hands of an innocent purchaser for value, the title of the defrauded owner, at his option, at once attaches to the avails, so long as their identity is preserved, no matter how many transmutations of form the property has passed through. So long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust. The

product or substitute has the nature of the original imparted to it. The depositing of trust money in a bank, although it creates the relation of debtor and creditor between the bank and the depositor, does not change its character, nor relieve the deposit from the trust. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing. (*Taylor v. Plumer*, 3 Maule & S. [Eng.], 562; *Pennell v. Deffell*, 4 De Gex, M. & G. [Eng.], 372; *Frith v. Cartland*, 2 Hem. & Mill. [Eng.], 417; *Knatchbull v. Hallett*, 13 Ch. Div. [Eng.], 696; *Overseers of Poor v. Bank of Virginia*, 2 Gratt. [Va.], 544; *Van Alen v. American Nat. Bank*, 52 N. Y., 1; *People v. City Bank of Rochester*, 96 N. Y., 32; *Cragie v. Hadley*, 99 N. Y., 131; *Whitley v. Foy*, 6 Jones Eq. [N. Car.], 34; *Farmers & Mechanics Nat. Bank v. King*, 57 Pa. St., 202; *Peak v. Ellicott*, 30 Kan., 156; *National Bank v. Connecticut Mutual Life Ins. Co.*, 104 U. S., 54; *McLeod v. Evans*, 28 N. W. Rep. [Wis.], 173; *Third Nat. Bank of St. Paul v. Stillwater Gas Co.*, 30 N. W. Rep. [Minn.], 440; *Amer v. Hightower*, 70 Cal., 440; *Sleeper v. Davis*, 64 N. H., 59.)

· The interposition of equity is not necessary to a protection of all rights where a trust fund has been perverted. The *cestui que trust* can follow it at law so far as it can be traced. (*United States v. State Bank*, 96 U. S., 35; *May v. Le Claire*, 11 Wall. [U. S.], 217; *Taylor v. Plumer*, 3 Maule & S. [Eng.], 562; Newmark, Deposits, sec. 24; *Union Stock Yards Co. v. Gillespie*, 137 U. S., 411.)

RYAN, C.

During all the time within which the transactions referred to in this case took place, the firm of Palmer, Richman & Co. was engaged in the live stock commission business in South Omaha. At the same time, George L. Hurlburt, George Liggett, and Clifford G. Hurlburt were doing business at Utica, Nebraska, under the name and style of the Merchants Bank. Alexander C. Virgin was

15

also a resident of the town last named. The first named firm sued the aforesaid banking partners and Alexander C. Virgin, in the district court of Douglas county, Nebraska, for the sum of $2,000, with interest from the 1st day of December, 1888, and costs. Upon a verdict found in favor of Palmer, Richman & Co., judgment was rendered for its amount, being for the sum of $2,023.43. The Hurlburts and Liggett bring the case into this court for review upon petition in error. The petition in the district court, after stating the facts above set forth as to the membership of the above firm, their occupation and location, stated the plaintiffs' cause of action in the following language:

"3. That about the middle of the month of October, 1888, these plaintiffs arranged with the defendant Alexander C. Virgin that these plaintiffs would furnish the said Virgin money with which to pay for cattle and hogs which the said Virgin might thereafter buy, on condition that the said Virgin should consign the same to these plaintiffs at South Omaha for sale on the market, and that these plaintiffs would make sale of the stock so consigned to them and apply the proceeds of such sales, less the commission of these plaintiffs, to the payment of the money and interest thereon so as aforesaid advanced to the said Virgin. And the said Virgin, in consideration thereof, did agree to proceed at once to make purchase of the said stock, and that after he had purchased the same he would draw upon these plaintiffs at sight for the amount of the cost thereof, through the defendant the Merchants Bank aforesaid. These plaintiffs then saying, and it being distinctly understood between them and the said Virgin, that the said Virgin was not to make any drafts upon these plaintiffs for such advances until after he had purchased the stock for shipment to the plaintiffs as aforesaid, and that the said drafts should in no case exceed the amount which the said Virgin had actually contracted to pay for the stock actually purchased by him and arranged for their shipment to these plaintiffs.

Hurlburt v. Palmer.

"4. Plaintiffs say that the defendant Virgin immediately thereafter acquainted the defendant the Merchants Bank with the nature of the said agreement with these plaintiffs, and that before any payments were made by these plaintiffs on account of said agreement to the defendant Virgin, the defendant the Merchants Bank fully knew and understood the exact nature and extent of the agreement with regard to the advances so to be made by these plaintiffs, and the exact nature and condition of said agreement.

"5. That at that time, that is to say, during the month of October, 1888, the said Virgin was indebted to his co-defendant, the Merchants Bank of Utica, in a large sum of money, the exact amount of which is unknown to these plaintiffs, but the same was more than $2,000, and the said Virgin was then, as these plaintiffs are now informed, insolvent and largely involved, all of which was well known to his co-defendant, the Merchants Bank of Utica; that said Merchants Bank of Utica unlawfully and fraudulently designing to cheat and defraud these plaintiffs out of their money, and fraudulently designing and intending to secure the indebtedness which the said Virgin then owed to the Merchants Bank, by obtaining payment thereof from these plaintiffs, did unlawfully and fraudulently agree and arrange with the said Virgin that said Virgin should draw on these plaintiffs for large sums of money, to-wit, on November 16, 1888, for $1,800, and on November 20, 1888, for $1,000, and that the same should be applied on the indebtedness said Virgin then owed the Merchants Bank as aforesaid, in fraud of the rights of these plaintiffs.

"6. And the plaintiffs say that upon or about the dates aforesaid the defendant Virgin, in pursuance of the arrangements with the defendant the Merchants Bank, as hereinbefore stated, did draw upon these plaintiffs for the said sum of $1,800 and $1,000 through the defendant the Merchants Bank, and the said drafts were, as soon as presented to these plaintiffs, viz., on or about November 19

and 24, respectively, paid by these plaintiffs in full, and the proceeds thereof remitted to and received by the defendant the Merchants Bank; that at the time the said drafts were drawn, as aforesaid, the defendant Virgin had not purchased the stock to be paid for with the aforesaid money, except about $800 thereof, and the said Merchants Bank well knew that fact, and well knew the defendant Virgin had no right or authority to draw upon these plaintiffs for any portion of said money, except so much thereof as was necessary to pay for such stock as said Virgin may have purchased for shipment to these plaintiffs, and received the same in full of these drafts and converted the same to its own use by applying the same wrongfully and fraudulently to the indebtedness which the said Virgin owed it as aforesaid; and that the $800 worth of stock was purchased as aforesaid by the said Virgin, the amount in full thereof was received by the said defendant the Merchants Bank in part discharge of said Virgin's indebtedness to it, well knowing at the time that the said stock and the said money with which the same was paid were the property of these plaintiffs. And plaintiffs say that they have demanded that the defendant should repay the same to these plaintiffs, but they have failed to pay the same, or any part thereof, and that by reason of their said failure these plaintiffs have been damaged by the defendant in the sum of $2,000, no part of which has been paid."

These averments of the petition are set out in full that there may be no misapprehension as to the theory upon which plaintiffs based their right of recovery. The evidence discloses the fact that at the time the two drafts of date November 19 and November 24, respectively, were drawn, the defendant Virgin was indebted to the bank in a sum exceeding the amount of either of said drafts. It is equally clear from the testimony that the title to the property purchased by Virgin for shipment to Palmer, Richman & Co. was not in Palmer, Richman & Co., nor

did the arrangement between these parties and Virgin contemplate that the title should be held by any other than Virgin himself until the several shipments were received at South Omaha.   There is no testimony whatever to sustain the averment that there was a conspiracy, or anything in the nature of a conspiracy, between the partners composing the Merchants Bank and Virgin, with respect to a contemplated misappropriation of the proceeds of the drafts drawn by Virgin on Palmer, Richman & Co. in favor of the Merchants Bank.

The plaintiffs' right of action, if a right of action exists in their favor, must be predicated solely upon the facts set out in paragraphs numbered 3 and 4, supplemented with the fact that the proceeds of the drafts so drawn were applied by the Merchants' Bank in payment of an indebtedness to that bank owing by Virgin, the drawer of the drafts, to it, and the taking of a mortgage to the bank upon property, for the payment of which the proceeds of the drafts were designed by the drawer and the drawee to be used.   The testimony as to the knowledge of the partners composing the firm known as the Merchants Bank, of the arrangements between Virgin and Palmer, Richman & Co., is not as broad as the allegations of the petition.   The only witness who testified as to facts which would charge the members of the firm known as the Merchants Bank with notice was Alexander C. Virgin himself.   He says in his evidence that "I told them that I had made arrangements down with Mr. Richman, or Palmer & Co., that I would draw so much for the shipment of hogs that would have to follow, or stock—I don't think I said hogs." This conversation he said was close to the first day on which he drew a draft.   The witness further testified that about the last of October, 1888, he had an overdraft in the Merchants Bank, and that Mr. Liggett wanted him to turn over some hogs he had in his possession, and that witness did not think it was right to do it, and that Liggett in-

sisting upon his doing so, witness told him he would not
do it; that Mr. Liggett came to witness and said that wit-
ness must straighten up with the bank or that he would
dishonor witness's checks, and that witness could not han-
dle any more hogs; that witness told him he would do
anything that was honorable and right to do; that Liggett
said that if witness would give him a mortgage on what
stuff witness had there, some cattle and what hogs were in
the yard, and some personal property there, and a draft on
Palmer, Richman & Co. for the $1,000 or $1,200, some-
thing like that, that there would be nothing wrong about
it, and that he, Liggett, would see that witness was pro-
tected; that witness asked Liggett then if he would not
give witness time so that witness could work it out, and
that Liggett said he would not; that he would close right
up on witness if witness did not do it, and that witness
turned right around and gave him a mortgage on the stuff.
This witness further stated that he told Liggett that he
had promised to draw these drafts and make shipments
afterwards; that it was an accommodation to the witness
so to do; that such shipments were to be made to Palmer,
Richman & Co., and that witness did not think it would
be right under the circumstances to do as Liggett required,
but that Liggett said it would be perfectly right, and that
thereby witness did not lay himself liable, either criminally
or in any other mode, and that he, Liggett, would protect
witness in every shape, way, and form if witness would
do this and turn them over to him. This witness further
testified that all of the hogs mortgaged had been paid for
with the money witness got from Palmer, Richman & Co.

After the giving of the mortgage and the turning over
to the Merchants Bank of the proceeds of the last draft,
there is evidence that there was a conversation in the Mer-
chants Bank between the defendants, that is to say, the
Hurlburts and Liggett of one part, and Virgin of the
other part, from which it was possible for the jury to infer

that the Merchants Bank had promised to hold Virgin harmless as to the indebtedness due from Virgin to the bank, as well as a certain other indebtedness due from Virgin to a school district, if Virgin would comply with the request of Liggett as to giving a mortgage and turning over the $1,000. In our view of the matter, however, this is not specially material. The question then presented upon the petition and the evidence given in support of it is simply whether the Merchants Bank was liable to Palmer, Richman & Co. for the value of the stock mortgaged to it and for the proceeds of the draft paid by Palmer, Richman & Co. upon the arrangement that the proceeds of the drafts should be used by Virgin in the purchase of stock and shipment thereof to the live stock commission firm aforesaid. It is not claimed that there was any privity between the Merchants Bank and Palmer, Richman & Co. The only theory upon which a recovery can be had by the latter named firm against the former is that the sale of the stock mortgaged to the Merchants Bank, and the proceeds of the drafts drawn through that bank, were applied upon an indebtedness conceded to be due from Virgin to the said bank. The conversation between Virgin and Liggett was, according to Virgin's account of it, only such as would advise Liggett of the intention on the part of Virgin to use the money advanced by Palmer, Richman & Co. in making payment for hogs which Virgin had already bought in his own name. As the title was in Virgin, Palmer, Richman & Co. could assert no claim as against the hogs themselves, unless they were entitled to a lien upon them for advances made to be used in paying for them. When the last draft for $1,000 was paid by Palmer, Richman & Co., it was to supply Virgin with money for the purpose above indicated.

Counsel for defendants in error insist that the sole question was this: "Did the Merchants Bank receive the money advanced by Palmer, Richman & Co. *bona fide*

and without notice of the purpose for which it had been advanced to Virgin?" The element of *bona fides* does not enter into the proposition, except in so far as inducing Virgin to pay to the bank money which had been advanced to him for another specific purpose may have been *mala fide*. The money advanced to Virgin was essentially a loan, and the fact that it was designed to be applied to a particular purpose made it none the less so. For illustration, let us suppose the bank had loaned Virgin money with which to buy hogs for himself, and that instead of purchasing hogs he had used the money loaned him to pay his grocery bill. Could the grocer be held liable to the bank for the amount of such payment received by him, even though he knew when he received payment that the bank loaned the money that hogs might be purchased with it? Or, let us suppose that Virgin used the money which he borrowed of the bank, in the hypothetical case just stated, in buying hogs which he afterwards mortgaged to secure his grocer, and the grocer forecloses his said mortgage. On what theory could the bank recover from the grocer the value of the hogs? Upon the evidence in this case a recovery would be a precedent for holding liable the grocer in either of the cases supposed. In respect of this matter, however, the contention of the defendants in error is made in the following language: "Every dollar which Virgin obtained from Palmer, Richman & Co., which was not invested in stock, and which was diverted by him to his personal use, was fraudulently obtained and fraudulently used, so far at least as Virgin was concerned. It is elementary that a person obtaining property by fraud acquires no title to it, but it is held by him, and all persons claiming under him with notice, in trust for the original owner. So long as the property can be identified in its original form, or in a substituted form, it belongs to the original owner, if he elects to claim it; and if it passes into the hands of an innocent purchaser for value, the title of the defrauded owner,

at his option, at once attaches to the avails so long as their identity is preserved, no matter how many transmutations of form the property has passed through. So long as the trust property can be followed and traced into other property into which it had been converted, that remains subject to the trust. The product or substitute has the quality of the original imparted to it," etc. With this statement of principles we have no occasion to quarrel. The difficulty is that there is no trust relation shown other than such as exists ordinarily between a debtor and creditor. The loan was to enable Virgin to pay for hogs purchased by himself, for himself, and to be shipped as his property to Palmer, Richman & Co., by whom they were to be placed on the market, and in the proceeds of the sales alone were they interested, and that only to the extent of obtaining reimbursement for the money previously loaned Virgin. Instructions were given, based on the theory above stated, as the contention of the defendants in error, and as such instructions were propounded upon an erroneous conception of the relations and resulting obligations as between the parties in this litigation, they cannot be sustained. Neither the facts in support of which there was evidence, nor the law applicable to such facts, justified the judgment of the district court.

The petition in this case was filed on May 10, 1889. On the same day a summons was issued directed to the sheriff of Douglas county, commanding him to notify the defendant Virgin (impleaded with George L. Hurlburt, George Liggett, and Clifford G. Hurlburt) that he had been sued by Clinton R. Palmer and others, and requiring him to answer on or before the 10th day of June following. On the same date, to-wit, May 10, 1889, there was issued an alias summons directed to the sheriff of Seward county, commanding him to notify the defendants Hurlburt and Liggett, partners under the firm name and style of the Merchants Bank, that they were required to answer on or

before the 17th day of June immediately following.    The summons directed to the sheriff of Douglas county was served on Alexander C. Virgin May 15, 1889, in that county.    On the 17th day of May aforesaid, the alias summons was served on the Hurlburts and Liggett in Seward county, Nebraska.    On August 21, 1889, a third summons was issued to the sheriff of Douglas county commanding him to notify Alexander C. Virgin, impleaded as above described, that he had been sued by Clinton R. Palmer and others, and requiring him to answer on or before the 23d of September, 1889.    This third summons was served on Alexander C. Virgin August 21, the same day upon which the sheriff made return that he received the summons. Still further, on the same day, August 21, 1889, Alexander C. Virgin, in writing, entered his voluntary appearance in the cause and submitted himself to the jurisdiction of the court, as he recited in the paper by which he entered such voluntary appearance.    No answer or other pleading was filed by or on behalf of Virgin after the entry of his voluntary appearance above recited.    On the 15th day of June, 1889, George L. and Clifford G. Hurlburt and George Liggett filed their answer to the petition of plaintiff, in which they first admitted they were partners doing business as the Merchants Bank, and denied all other allegations therein contained.    This admission and denial constitute the first defense, which was separate and distinct from that which followed.    The second defense was pleaded as follows:

" 2. These defendants allege that at the commencement of this action neither was a resident of, nor within, the county of Douglas, nor was service of summons had on either of them therein; that their co-defendant, Alexander C. Virgin, as well as these defendants, were at the commencement of this action and prior thereto, and are now, *bona fide* residents of Seward county, Nebraska; that prior and subsequent to the commencement of this action the defend-

ant Virgin was confined in the jail of Seward county, Nebraska, in default of bail, and the said Virgin was taken by the deputy sheriff of Seward county, Nebraska, without any authority of law, by and at the request of plaintiffs' attorneys, out of the jail of Seward county, Nebraska, and conveyed to the city of Omaha, Nebraska, by said deputy sheriff, and when he arrived in said city, and while in the custody of said deputy sheriff, he was served with a summons in this action, and said service is the only service had upon him; that said Virgin was taken to the city of Omaha, Nebraska, by the fraud and collusion of plaintiffs' attorneys, for the purpose of serving him with a summons, and as soon as said service of summons was obtained upon him as aforesaid, he was conveyed by said deputy sheriff back to and confined and deposited in said jail of Seward county, Nebraska, aforesaid; and these answering defendants aver that the only service had upon them, or either of them, was in Seward county, Nebraska, and that the service of summons upon said Virgin was a fraud upon him, or in collusion with him was a fraud upon these answering defendants and upon the jurisdiction of this court, and was obtained as aforesaid for the purpose of making these answering defendants contest their cause at Omaha, Nebraska, instead of where they and their co-defendant reside."

Upon the trial of the cause the defendants Hurlburt and Liggett offered to prove by Mr. Murphy that at the time the action was commenced the said Murphy was deputy sheriff of said Seward county, Nebraska, and that at the request of counsel for plaintiffs he brought the defendant Alexander C. Virgin into Douglas county, and that within an hour after he arrived in the city of Omaha, plaintiffs caused the summons which was served upon him to be served in the county of Douglas, and that said Virgin was at the time held upon the charge of embezzlement, and after service as aforesaid was taken immediately back to Seward county, where he remained in confinement to exceed

the period of thirty days; that he was brought into Douglas county, not upon his own request, but by the direction of plaintiff's attorney, Mr. Colman, who paid his railroad fare and the hotel bills, in order to get service upon George L. and Clifford G. Hurlburt, and George Liggett, and to compel them to go to Douglas county to defend this action, and the offer was tendered for the purpose of showing that jurisdiction was obtained upon the defendants Hurlburt and Liggett in fraud of the process of the court in Douglas county. This offer was objected to upon the ground that it was immaterial, irrelevant, and incompetent. The objection was sustained by the court on the ground that defendants having voluntarily appeared and answered in the case, it was too late at the time of the offer to raise the question of jurisdiction. To this ruling due exception was taken.

These facts present for our determination the question whether or not by answering as one defense by way of a general denial (modified perhaps by an admission), the defendant of necessity waived his right to plead as a separate defense such facts as would show that jurisdiction of the person of the defendant had been obtained, if at all, by fraud and abuse of the process of the court—the facts above offered to be proved leaving no room for a milder statement as to the propositions in support of which proof was tendered. It is greatly to be regretted that the adjudications of this court upon the proposition stated furnish apparent authority for the contention of each party.

Counsel for defendants in error cite *Porter v. Chicago & N. W. R. Co.*, 1 Neb., 14, a case in which it was held that the defendant might appear specially to object to the jurisdiction of the court either over the subject-matter of the action or of his person, but that if by motion or other form of application to the court he sought to bring its powers into action, except on the question of jurisdiction, he should be deemed to have appeared generally.

In *Cropsey v. Wiggenhorn*, 3 Neb., 108, it was held that

after the defendant had filed a motion to strike from the files an improperly verified petition, it was too late to raise the question as to the court having properly acquired jurisdiction of the defendant upon a summons insufficiently indorsed.

The facts in the case of *Crowell v. Galloway*, 3 Neb., 215, were that the return day in a summons was fixed for the first Monday instead of the third Monday, as required by section 66 of the Code of Civil Procedure. After judgment by default the defendant filed a motion for its vacation, because there had been indorsed on the summons no amount for which, in case of default, a judgment would be taken, and "because the summons had not been made and issued in conformity to law." No ruling was had upon the motion in the trial court, and this court held that the above assignment made, of irregularity as to the making and issuing of the summons, was too indefinite to be considered. LAKE, C. J., commenting upon the remainder of the motion, said : "It is a general, and we think a wholesome rule of practice, that if the defendant intend to rely upon the want of personal jurisdiction as a defense to a judgment, he must either make no appearance, or if at all, for the single purpose of questioning the right of the court to proceed; and if he do more than this and appear for any other purpose at any stage of the proceedings, he shall be held thereby to have waived all defects in the original process and to have given the court complete jurisdiction over him for all the purposes of the action." As applied to matters appearing upon the face of the record itself, in the case then under consideration, this language is not open to criticism.

In *Aultman v. Steinan*, 8 Neb., 109, it was held that service of summons might not be made by leaving a copy at the defendant's usual place of business, yet that if the defendant wished to avail himself of the defect named, he must confine his motion to that alone.

In *Kane v. Union P. R. Co.*, 5 Neb., 106, it was held, merely where a public officer was sued in a county other than that of his residence for a wrongful act by him done under color of his office, that if he voluntarily appeared and pleaded to the merits of the case, he waived the objection to the jurisdiction of the court. This hardly countenances the proposition that where such a defendant appeared and objected to the jurisdiction he thereby waived his said objections.

In *Hilton v. Bachman*, 24 Neb., 490, the holding was that no collateral attack upon the judgment could be permitted whereby it was sought to show that no proper service of summons had been made when the defendant voluntarily appeared and made a contest upon other matters pending in the suit wherein he had been irregularly summoned.

In *Bucklin v. Strickler*, 32 Neb., 606, it was held that a motion to quash containing a prayer for dismissal was a general appearance of the defendant.

A careful review and consideration of all the cases decided by this court upon the subject under consideration fully satisfies us that the point presented has never yet been settled as contended by the defendants in error, and as perhaps assumed by the learned district judge. Each case claimed to sustain the contention of the defendants in error was where there was a merely defective service, or where the summons was either defective in itself, or by reason of its indorsement. These were matters which the court could determine by an inspection of the summons or by an examination of the return, or of the indorsement criticised. It is very clear that as to these the defendant can raise objections without the necessity of showing facts independently of the record. Sound reasons therefore exist for requiring the defendant to confine himself to pointing out these objections to jurisdiction distinctly from any other matters. The objections urged in this case, if shown to be

founded upon facts, should just as completely deprive the
court of jurisdiction as any of the enumerated matters ob-
servable of record.   Such objections, however meritorious,
can only be considered when pleaded and proved as facts.
How this is to be done is a question which we must now
determine.

In *Cobbey v. Wright*, 29 Neb., 274, MAXWELL, J., deliv-
ering the opinion of this court, said : " Unless the court
acquires jurisdiction by reason of the subject-matter being
situated within the county where the action is brought, the
action must be commenced in the county in which the de-
fendant resides or may be served with a summons. (*Dunn
v. Haines*, 17 Neb., 560; *Pearson v. Kansas Mfg. Co.*, 14
Neb., 211 ; *Cobbey v. Wright*, 23 Neb., 250 ; *Allen v. Mil-
ler*, 11 O. St., 374.)   Unless there is a general appearance
in the case, the court can acquire jurisdiction only in the
mode provided by law; and it is not the policy of the law
to permit a nominal defendant having no real interest in
the result of the action to be joined with the real defendant
in order that an action may be brought against such actual
defendant in a county other than that in which he resides
or may be summoned."

In the case of *Dunn v. Haines*, cited with approval in
the quotation just made, MAXWELL, J., for the court, said :
" Where it is claimed that the county court has erred by
assuming jurisdiction over the person of the defendant in
an action pending in that court, the proper mode of re-
viewing the question of jurisdiction, or the want of it, is
by petition in error to the district court.   In a court of
original jurisdiction a defendant may join all his defenses
in one answer; that is, he may plead want of jurisdiction
and to the merits, because if any one of his defenses is
good and sufficient it will defeat a recovery, and the Code
authorizes him to plead any defense, counter-claim, or set-
off he may have.   As he relies upon the want of juris-
diction over his person that question is in issue, and if

the ruling is against him he may have it reviewed on error." ·

The right of the defendants, situated as were the plaintiffs in error, to plead want of jurisdiction by way of answer as a defense is. recognized in *Allen v. Miller*, 11 O. St., 374, and in *Drea v. Carrington*, 32 O. St., 595. In the latter of the two cases just cited it was held that the questions pertaining to jurisdiction, of necessity raised by answer, could only be tried by the jury unless parties consent that the court might determine them. By the same court proceedings to obtain jurisdiction of the persons of the defendants much like that charged in this case were severely reprehended in *Compton v. Wilder*, 40 O. St., 130.

In reference to a somewhat analogous question to that under consideration, a plea of non-joinder of parties plaintiffs, Sherwood, C. J., thus stated the view of the supreme court of Missouri, in *Little v. Harrington*, 71 Mo., 391: "Under our Code, as the plaintiff sued as the sole owner of the goods, and as the objection could not be taken by demurrer, it only remained for the defendants to interpose such objections by answer; this they did, and in this it is quite clear from the authorities cited that they should have been successful and the plaintiff should have been compelled to amend before proceeding further with his suit; and it was competent for the defendants, in connection with other matters in the same answer, to plead the non-joinder of Winkle as co-plaintiff. The statute expressly says that 'the only pleading on the part of the defendant is either a demurrer or an answer.' (2 Wag. Mo. Stat., p. 1014, sec. 4.) And with the same degree of explicitness it is provided that the defendant may set forth by answer as many defenses and counter-claims as he may have, whether they be such as have heretofore been denominated 'legal or equitable,' or both. (Ib., 1016, sec. 13.) It is evident from these statutory provisions that only one answer is contemplated, and this to contain whatever defense or defenses the defend-

ant may have, thus dispensing with the common law rule that a plea in bar waives all dilatory pleas, or pleas not going to the merits. On this point Judge Bliss in his recent work very justly and pertinently observes 'matter in abatement is as much a defense to the pending action as matter in bar, and to say that the defendant may reserve the latter until a trial shall have been had upon the issues in regard to the former, would interpolate what is not in the statute; would be inconsistent with its plain and simple requirements.' (Bliss, Code Plead., sec. 345.) A different view of this subject was at first taken in New York from the Code of which our own is derived, but subsequent adjudications have overruled former ones and announced and enforced statutory rules. The same course of judicial decision now prevails in Indiana, and prior decisions at variance with it have been held incorrect. (Ibid., and cases cited.)"

The same court in *Byler v. Jones*, 79 Mo., 263, recognized the analogy above referred to, and for our purpose, sufficiently state the essential fact of the case it had under consideration in the following language: "Our practice act provides that suits by summons shall be brought ' when the defendant is a resident of the state, either in the county within which the defendant resides or in the county within which the plaintiff resides and the defendant may be found.' (R. S., sec. 3481.) The motion admitted the facts of the plea, and according to the truth of the plea, the defendant was a resident of Morgan county and while there could not be found in Lynn county. The plaintiff, with the view of rendering it possible for the sheriff of Lynn county to find him there, made use of the criminal process of the state which extends to any county for the purpose of bodily seizure and transportation. After such seizure or arrest and transportation to Lynn county, the defendant is served with process in this proceeding for damages. This method of finding a citizen in the county where the plaint-

iff resides cannot receive the approbation of this court. It was an abuse of the criminal process of the state to employ it for any such a purpose, and the courts of Lynn county could acquire no rightful jurisdiction over the person of the defendant in any civil proceeding by means of such a contrivance and wrong. No rightful jurisdiction of a party can be acquired by fraud or misrepresentation, and if the person so proceeded against brings it properly to the attention of the court assuming jurisdiction over him, as the defendant did in this case, the suit must be dismissed after proof or admission of the facts. (*Capital City Bank v. Knox*, 47 Mo., 334; *Vastine v. Bast*, 41 Mo., 493; *Graham v. Ringo*, 67 Mo., 324.) A demurrer would be the better method of contesting the validity of the answer than a motion to strike it out. I may remark in this connection, that under the recent decisions of this court the defendant could have included in his answer a defense to the merits of the case without foregoing the benefits of his plea to the jurisdiction. (*Little v. Harrington*, 71 Mo., 390.)" The same principle was announced and enforced, under circumstances much like those of the case last cited, in *Christian v. Williams*, 35 Mo. App., 297.

The misapprehension of the scope of former decisions of this court as justifying an inference of waiver as to the question of jurisdiction, by pleading the facts defeating it in connection with other matters of defense by way of answer, required the review by this court of its former opinions on that subject, and having found that this court had not gone to the extreme assumed, it was deemed but proper to notice the holdings of other courts upon the same subject. Our conclusion is, that under section 99 of the Code of Civil Procedure it is proper to plead as a distinct defense such facts as do not appear in the record, whereby it is made known that the court has no jurisdiction either of the person or the subject-matter of the action. As an original question it would seem that there should

have been no doubt as to this proposition, for it is pro-
vided in section 94 of the Code of Civil Procedure, among
other provisions, that "the defendant may demur to the pe-
tition only when it appears on its face either, first, that the
court has no jurisdiction of the person of the defendant or
the subject of the action," etc. In the same Code it is pro-
vided as follows by section 96: "When any of the defects
enumerated in section 94 do not appear upon the face of the
petition, the objection may be taken by answer, and if no
objection be taken either by demurrer or answer, the de-
fendant shall be deemed to have waived the same," etc.
By this section it is expressly provided that the failure to
make objection by answer, where the defect does not appear
upon the face of the petition, shall be deemed a waiver of
such defect; that is to say, the failure to raise by answer
the question of jurisdiction, arising as it did in this case,
must be deemed a waiver of all objections on that score. It
is a harsh and unnatural construction, and one in direct
contravention of the provisions of this section, to hold that
by taking objections to jurisdiction in the manner provided
thereby, the defendant waives the very objections he shall
be deemed to have waived unless he proceeds in that very
manner. In view of all the considerations to which at-
tention has been challenged, we conclude that the district
court erred in sustaining the objections made to the evi-
dence offered for the purpose of showing that the court
had no jurisdiction of the persons of the plaintiffs in error.

In the case of *Shawang v. Love*, 15 Neb., 142, COBB, J.,
said that his understanding of the law as well settled was,
that by taking an appeal or suing out a writ of error the
defendant waived all errors of want of jurisdiction of the
person; in other words, that by appealing or suing out
a writ of error the party submitted himself to the jurisdic-
tion of the district court. If this proposition is a correct
statement of the law, it necessarily results that where the
defendant must specially plead the want of jurisdiction by

answer he can be heard in respect thereto only in the court where he first makes the objection, for, if, as in the case at bar, he, in this court, attempts to have reviewed the errors which he alleges attended the determination of the question of jurisdiction in the district court, he will not be heard, simply and solely because he has brought the question to this court. In this we cannot concur. The statute gives the defendant the right to raise this question by answer, nay, more, in a certain class of cases, requires that at his peril he must so raise it, and this defense should, therefore, be treated with all the consideration any other class of defenses is entitled to receive. Section 24 of article 1 of the constitution of Nebraska provides as follows: "The right to be heard in all civil cases in the court of last resort, by appeal, error, or otherwise, shall not be denied." The language employed in *Shawang v. Love, supra,* to which we have called attention, ignores this provision of the bill of rights, and cannot, therefore be sustained. That part of the opinion in *Shawang v. Love, supra,* therefore, which lays down the rule that by suing out a writ of error, or appealing to this court, the defendant waives all errors of want of jurisdiction and thereby submits himself to the jurisdiction of the district court, is overruled. The judgment of the district court is

REVERSED.