GLADYS CALLAHAN, APPELLEE, v. ALLIED MILLS, INC., APPELLANT.

FILED FEBRUARY 8, 1935. No. 29394.

*Kennedy, Holland & De Lacy* and *E. J. Svoboda,* for appellant.

*Leon & White, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

CARTER, J.

This suit was instituted by Gladys Callahan to recover compensation for the death of her husband, Walter Callahan, under the workmen's compensation law of this state. The record discloses that the case was heard by the compensation commissioner and a dismissal of plaintiff's claim entered on March 24, 1933. Notice of intention to appeal

was filed with the compensation commissioner on April 1, 1933. The petition was filed in the district court on April 4, 1933, and the defendant answered thereto on April 10, 1933. The petition alleges that, "on March 24, 1933, an award was made by the compensation commissioner of the state of Nebraska, denying the plaintiff's request and prayer for judgment and dismissing the plaintiff's petition," and the further statement that "notice of appeal was given to the defendant on April 1, 1933." Among other defenses, the defendant in its answer alleges "that notice of appeal from the said petition was not filed within the time required by the compensation laws of the state of Nebraska, and that the said order of dismissal is binding upon the plaintiff and the defendant." There were no pleadings filed in the district court except the petition and answer referred to herein. Appellant, Allied Mills, Inc., contends that under this state of facts the district court was without jurisdiction to hear this case and that the dismissal by the compensation commissioner is a final determination of the case.

Subdivision g of section 48-157, Comp. St. 1929, provides: "Every order and award of the compensation commissioner shall be binding upon each party at interest unless notice of intention to appeal to the district court has been filed with the compensation commissioner within seven days following the date of rendition of the order or award." The petition discloses on its face that the notice was given more than seven days after the order of dismissal was entered, the appeal in all other respects being properly made. Unless the defendant has waived the giving of the notice within the seven days, the district court did not obtain jurisdiction over the defendant. This court has held: "The provision for the filing of notice with the compensation commissioner was for the purpose of giving the adverse party knowledge of the appeal. Upon the filing of such notice, no further duty devolved upon the compensation commissioner. The filing of such notice did not affect the award; on the other hand, the award

continues to be binding until the appeal is perfected and service had. It is apparent that such notice is for the benefit of the opposing party, and in such cases it is generally held that the party for whose benefit the provision is made may waive the giving of the formal notice, and that this may be done by a voluntary appearance in the court where the appeal is lodged." *Mucha v. Morris & Co.,* 105 Neb. 180.

In the case at bar, the defect in the notice appeared on the face of the petition. The rule has been well established by this court that objections to jurisdiction which do not arise upon the summons, the indorsement, or service thereof, or upon the face of the petition, may be raised for the first time by answer in connection with other defenses. *Hurlburt v. Palmer,* 39 Neb. 158; *Herbert v. Wortendyke,* 49 Neb. 182. But where it appears on the face of the petition that the notice of intention to appeal was filed more than seven days after the award of the compensation commissioner, and the objection thereto is raised for the first time in the answer, the defect in the time of the service of the notice will be deemed to have been waived and the court properly obtained jurisdiction of the case.

The evidence in this case discloses that on and prior to April 4, 1932, the deceased, Walter Callahan, was in the employ of the defendant, Allied Mills, Inc., as a night watchman; that on April 4, 1932, while in the course of his employment, he received injuries in a fire, consisting of numerous and severe burns about his back, arms, neck and head that necessitated his removal to a hospital for a period of 26 days and the services of a physician until May 18, 1932. He was paid compensation for his injuries and returned to work on May 31, 1932. On August 16, 1932, the deceased became ill, complained of severe pains in the region of the pit of his stomach, was operated upon August 22, 1932, and died August 24, 1932. The plaintiff contends that the deceased died as a result of a gastric duodenal ulcer caused by the burns incurred in the fire of

April 4, 1932, while it is the contention of the defendant that death was caused by an acute attack of appendicitis. The trial court found for the claimant and the defendant, Allied Mills, Inc., brings the case here for review.

The evidence of claimant consists of the testimony of the members of the family to the effect that the burns incurred on April 4, 1932, caused deceased continual pain to his back until the time of his last illness, that he was unable to eat and lost weight after the fire and that said injuries had never healed. Claimant also called a Dr. Philip Levy who testified as an expert that, in his opinion, the history and symptoms in the case indicated that the deceased suffered from a poisoning from the burns received and a derangement of the gastro intestinal tract. Dr. Levy also testified that gastro duodenal ulcers are sometimes caused by severe burns upon the body, which statement is not disputed.

The evidence of the defendant consists primarily of the two attending physicians, Dr. Joseph P. Swoboda and Dr. J. W. Duncan. Dr. Swoboda testified that he cared for the deceased while he was recovering from the burns above referred to and that the patient was wholly recovered on May 18, 1932. He further testified that, at the time of the second illness of the deceased, he diagnosed the case as an acute attack of gall bladder trouble, a perforated gastric duodenal ulcer or a very acute attack of a high-lying appendix. Dr. Duncan testified that he diagnosed the case the same as Dr. Swoboda. The symptoms indicated that his trouble was in the upper right quadrant of the abdominal area instead of the lower right quadrant which is the usual position of the appendix. There can be no question that both Doctors Swoboda and Duncan were somewhat uncertain in their diagnosis because of the unusual position of this appendix. Both Dr. Swoboda and Dr. Duncan were present at the operation, Dr. Duncan performing it and Dr. Swoboda assisting. Both testified positively that when the abdominal cavity was opened a large amount of free pus came out and that a detached

gangrenous appendix floated on it. Dr. Duncan testified that the cecum, to which the appendix attaches, lay unusually high under the liver, was attached there and had never been in the position where they are generally found. The testimony of these two doctors explains fully any uncertainty they may have had before the operation as to the cause of the illness of the deceased. Both testified that the gangrenous appendix and the resulting general peritonitis were the cause of death. Claimant's counsel makes much of the fact that the incision at the time of the operation was in an unusual location for an operation for appendicitis and in the usual place for an operation for a gastro duodenal ulcer. The doctors explain this satisfactorily when they state that the incision was made at the point where the symptoms indicated the pathology to be. That this is the usual practice among surgeons is not denied. The medical testimony is all to the effect that the burns suffered previously have no relation to the gangrenous appendix. The positive evidence of the two doctors who cared for the deceased, made the diagnosis of the case, performed the operation and noted the actual condition of the deceased at the time is so reasonable and logical that it must prevail over that of Dr. Levy who never saw the patient and merely expressed his opinion from a state of facts presented to him. Dr. Swoboda and Dr. Duncan both made a careful examination of the stomach and duodenum by inspection and palpation and found no evidence of an ulcer. After a careful examination of all the evidence, upon a trial *de novo,* we are constrained to hold that the trial court's findings are not supported by the evidence. The burden of proof is upon the claimant to show with reasonable certainty that Walter Callahan's death was proximately caused by the burns he suffered in the fire heretofore mentioned. This she has failed to do. That the death of the deceased was the result of a gangrenous appendix and resulting complications is amply proved by the evidence offered. The evidence clearly preponderates in favor of the defendant.

In view of the above findings by this court, it is not necessary to consider other alleged errors in the record.

The judgment of the district court is hereby reversed and the action dismissed.

REVERSED AND DISMISSED.