ARTHUR B. CUNNINGHAM, APPELLANT, V. ARMOUR & COM-
PANY, APPELLEE.

276 N. W. 393

FILED DECEMBER 10, 1937. No. 30200.

*John C. Barrett* and *Fred J. Schwertley*, for appellant.

*Kennedy, Holland, DeLacy & Svoboda*, contra.

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER
and MESSMORE, JJ., and TEWELL, District Judge.

GOSS, C. J.

Arthur B. Cunningham appeals because dissatisfied with
a compensation award made in the district court. On
August 6, 1934, plaintiff was working as a plumber or
steam-fitter in the basement below the engine room at the
packing plant of Armour & Company at South Omaha.
There is no question that he was an employee and, if in-
jured, was injured in the course of his employment.

About 10:30 on the morning named, a pipe (containing
ammonia under pressure) on the outside of the building
in which plaintiff was working, and about 35 feet above
the ground level, broke and caused ammonia fumes to enter
the building. When plaintiff realized this, he started to
escape and make his way to the outside. This necessitated
traveling a considerable distance through the plant. Just
before he reached a door to the loading dock, where he
would be outside in fresh air, he fell and attracted the

attention of two other employees. They supported him, one on either side, and he walked to the first-aid room, where they left him. The nurse received him and he sat in a chair until she finished the work on which she was then engaged. She testified that he had a slight redness on his neck, chin and lips and his face and forehead were slightly red. He was coughing some and nervous. She applied ointment, bandaged him with gauze, called the ambulance and sent him to the Lutheran Hospital for observation by Dr. Kirk, the company physician.

Plaintiff was discharged from the hospital August 18, 1934, and went home. Dr. Kirk is on the staff of the Lutheran Hospital. He testified that he was at the hospital when plaintiff was brought there by the ambulance in the forenoon of August 6, 1934; that his temperature on admission was normal and at 1:30 p. m. that day his temperature was 99, his pulse was 80; an examination showed no evidence of injury to the mucous membrane of the nose and throat, no injury to his eyes, the lungs were clear and the physical examination was essentially negative; again he saw him at 3 p. m. and he was sleeping; after awakening, his temperature was taken, at which time it was 98, his pulse was 80 and respiration was 18, all practically normal; that the next morning he found plaintiff had rested well the night before and the head bandages were removed and his face was examined for the first time; that he found only a slight redness, no blister, and it was not necessary to reapply the bandages,—merely to apply an ointment over those reddened areas.

It would take unmerited space to state all the evidence, which we have carefully read. When Cunningham was first confined in the hospital he had chills and muscular twitchings. Later, from time to time, he offered to show these twitchings, which he sometimes could produce voluntarily and sometimes failed to produce. He was offered the services of any doctor he might name and was examined by quite a number of local specialists from time to time. He was tendered the services of the Mayo Clinic

at Rochester, Minnesota, but chose to go to Chicago, to be examined by Dr. Solomon, a neurologist and psychiatrist of that city. He went to Chicago, at the expense of the company, and chose to go to a hospital rather than to a hotel, both of which were tendered. He was given a preliminary examination by Dr. Alfred P. Solomon at the doctor's office and then went to the hospital, where the doctor arranged to examine him further. There, after he took his room, an interne arrived to take the necessary history and had commenced to do so when Cunningham abruptly left the hospital and took a train home. The chief reason assigned by him for that action is that he thought his case was to be considered by a Dr. Meyer Solomon, whose name he had found in a list of Chicago specialists in a blue book in the Omaha Library.

As before stated, plaintiff was examined by quite a number of local doctors, eminent in their lines, and was tendered the other services named. Many X-rays were taken by both parties and are in evidence. We cannot take space here to detail all the evidence.

The effect of the evidence of Mr. Cunningham's medical witnesses is that he is still suffering from the results of gas poisoning; that of the company witnesses is that he has long been able to return to work, but that he is simulating symptoms of a disease that he does not have, is feigning, or is a malingerer for the purpose of continuing to receive compensation.

The district court allowed plaintiff compensation at the rate of $15 a week (which is conceded to be the correct rate) from February 15, 1935, to February 15, 1936 (compensation having previously been paid at that date from August 6, 1934, to February 15, 1935, as well as medical expenses for that period), and allowed other medical and hospital bills amounting to a total of $658.83; and further found and decreed that, from and after February 15, 1936, plaintiff was not disabled and is not entitled to compensation after that date.

From the evidence, without being able to see the wit-

nesses, we think the judgment of the district court was justified. The trial court had an opportunity to see the witnesses, observe their demeanor and to compare and weigh the oral testimony of those witnesses expressing conflicting views. This is a case where we think such opportunity affords some advantage to the trial court.

In a workmen's compensation case, it is incumbent on plaintiff to prove his case by a preponderance of the evidence. *Saxton v. Sinclair Refining Co.*, 125 Neb. 468, 250 N. W. 655; *Hudson v. City of Lincoln*, 128 Neb. 202, 258 N. W. 398; *Callahan v. Allied Mills*, 128 Neb. 352, 258 N. W. 804.

Where the evidence is conflicting, this court, upon a trial *de novo* in a workmen's compensation case, will consider the fact that the district court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others. *Southern Surety Co. v. Parmely*, 121 Neb. 146, 236 N. W. 178; *Sherman v. Great Western Sugar Co.*, 127 Neb. 505, 255 N. W. 772.

The earlier cases of *Shafer v. Beatrice State Bank*, 99 Neb. 317, 156 N. W. 632, *Greusel v. Payne*, 107 Neb. 84, 185 N. W. 336, *State v. Delaware-Hickman Ditch Co.*, 114 Neb. 806, 210 N. W. 279, and *City of Wilber v. Bednar*, 123 Neb. 324, 242 N. W. 644, announce the additional thought that, where in reviews *de novo*, the evidence is conflicting and "cannot be reconciled," this court will consider that the district court gave credence to the testimony of some rather than to the contradictory testimony of other witnesses. While in the cases first cited on this point it might well be said that it was implied that the conflicting testimony could not have been reconciled or it would have been, we prefer the statement of the rule with the qualification as stated in the cases in this paragraph. For the purposes of this case we state the rule as follows: Where the evidence is conflicting and cannot be reconciled, this court, upon a trial *de novo* in a workmen's compensation case, will consider the fact that the district court observed

the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others.

Plaintiff has failed to show by a preponderance of the evidence that he is entitled to compensation beyond the date fixed by the trial court.

The judgment of the district court is

AFFIRMED.