GEORGE F. MCGUIRE, APPELLANT, V. KANSAS CITY BRIDGE
COMPANY, APPELLEE.

270 N. W. 669

FILED JANUARY 5, 1937. NO. 29879.

*J. J. Friedman*, for appellant.

*Brogan, Ellick & Shoemaker* and *James J. Fitzgerald, Jr., contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

(1)

ROSE, J.

This is a proceeding under the workmen's compensation law. The claim of plaintiff, George F. McGuire, may be summarized as follows:

Defendant, Kansas City Bridge Company, employer, was engaged in constructing a bridge over the Missouri river between Omaha and Iowa. While plaintiff, an employee of defendant, was performing the duties of his employment as fireman on a locomotive crane operated in connection with the work on the bridge, he accidentally injured his neck September 25, 1934. The accident caused a fracture of the left lamina of plaintiff's sixth cervical vertebra and resulted in traumatized arthritis of his spine—total and permanent disability. Plaintiff's weekly wage was $33.60 and he prayed for compensation at the rate of $15 a week for 300 weeks and thereafter for $12 a week for life; also for hospital and other expenses.

In the compensation court defendant denied the alleged facts on which liability of defendant was based. The claim of plaintiff was rejected and the proceeding dismissed. Plaintiff appealed to the district court where the findings and judgment were again in favor of defendant. This is an appeal to the supreme court for the relief denied below.

Plaintiff takes the position that he proved a compensable injury by a preponderance of the evidence and that therefore the dismissal should be reversed and a decree for compensation entered in his favor on the record presented. His theory is that the fall and the resulting fracture activated former dormant arthritis of the spine and resulted in permanent disability.

It is well-settled law that the burden was on plaintiff to prove by sufficient evidence that he suffered a compensable injury arising out of and in the course of his employment, and that an award for compensation cannot be based on possibility, probability, speculation or conjecture. *Milton v. City of Gordon,* 129 Neb. 888, 263 N. W. 208.

Some of the facts proved are not in dispute. When plaintiff was about 55 years of age he was employed by defend-

ant July 2, 1934, as fireman on a locomotive crane, and continued to work in that capacity until March 26, 1935. While the locomotive crane was standing on a trestle on the morning of September 25, 1934, plaintiff blew sediment out of the boiler with steam in preparation for the day's work. Presently there was a sudden movement of the crane and he fell from his footing thereon through the trestle and struck the ground head first. He was shaken up and there was a gash on his left leg and he complained of pain in his neck. The distance of his fall was estimated by witnesses at 6 to 11½ feet and the time until he was back at work on the crane at 5 minutes to an hour. On account of the accident plaintiff did not lose any time or wages as locomotive fireman from September 25, 1934, until March 26, 1935, when the crane was no longer needed or used in the construction of the bridge and when plaintiff's employment was consequently terminated. His services were satisfactory for the entire period of his employment by defendant.

Testimony of plaintiff tended to prove the following facts: He was at first unconscious. Shortly after the accident his neck was swollen and painful; bones of his neck would not come together; he ate soft food for about a week; finally "snapped out of it and got along pretty well;" continued to work; in February his neck started to crack; at times everything turned kind of blue; legs were weak and he had to sit down, but recovered; had stinging in his neck once in a while but was able to perform the duties of his employment; had a "bad spell" about three weeks after he was laid off and seemed to see a big wheel of lights. At breakfast one morning he fell face forward on the table; dizzy spells increased until he had one or two a week; had pain on left side of neck; wore a brace on his neck; while in the employ of Phelan-Shirley Company January 17, 1920, injured his back and as a result was in a cast in a hospital for at least 33 days; that injury caused a fusion of his twelfth dorsal vertebra and his first lumbar vertebra; was disabled until 1927, but thereafter was continuously, except

for one short period, engaged in hard labor until accidentally injured while in the employ of defendant, September 25, 1934.

There was also additional testimony to the effect that, after defendant's employment of plaintiff ceased, he had severe headaches and fainting spells; pain in his back; did not sleep well; had no appetite; lost weight; was weak and unable to work.

To prove that total permanent disability was caused by the accidental fall from the crane, plaintiff called four physicians who testified as experts. From the history related by plaintiff, which was similar to that already outlined herein, from physical examinations of plaintiff and from what was disclosed by a number of X-ray pictures taken at different times, his experts testified, or expressed opinions, to the effect that X-rays disclosed an injury to the neck, a fracture of the left lamina of the sixth cervical vertebra; that a dark line on an X-ray film indicated the fracture; that all nerves and tissues in the area of the fracture are affected; that there is at the fracture an overgrowth of bone which impinges on the nerves; that the fall and resulting fracture revived former dormant arthritis of the spine; that vital organs were examined and blood tested; that evidence of an infection causing callus or a new growth of bone around the fracture was not found; that the impingement on the nerves is disabling and will grow worse; that plaintiff is totally disabled as the result of his accident September 25, 1934.

If the evidence adduced by plaintiff were unchallenged, it would be sufficient to support an award for compensation, but, on the issue of disability as a result of the fall, testimony of experts is in direct conflict.

From sources of information open alike to experts on both sides, three physicians testified for defendant. One or two or all testified, or expressed opinion, to the effect that it is not possible to get a satisfactory picture of the lamina itself, owing to the overlapping of bones in the path of the X-rays; that a line pointed out on one of the X-ray

films as indicating the course of a fracture of the left lamina of the sixth cervical vertebra is a shadow due to the overlapping of different bony projections; that the X-ray pictures in evidence do not indicate such a fracture; that a misplacement or a misalignment indicating a fracture is not shown; that osteoarthritis is evidenced on the third, fourth, fifth and sixth cervical vertebræ; that on the day plaintiff fell from the crane his injury was diagnosed as a sprain of neck muscles, not a fracture; that there was at first no physical abnormality in the neck except rigidity; that later examination showed an infection of the teeth, pyorrhea, pus oozing from the roots; that there was a kyphosis, or curvature of the spine backward near the middle, limiting motion backward and being more noticeable at the twelfth dorsal and the first lumbar vertebræ; that there was an old fracture of the first lumbar vertebra and a bony overgrowth extending upward to the twelfth dorsal vertebra; that other bones of the lumbar spine were likewise involved in the old arthritis; that the bones of the neck showed two tiny spots of mild arthritis like the overgrowth on the rest of the spine; that the left cervical nerve supplies the left arm which is normal in sensation and muscular movement; that there was no impingement of nerves at the lamina to cause disability; that the present condition of which plaintiff complains is due to the older fracture and to the former arthritis which goes up and down the spine, limiting motion, throwing the upper part of the back forward and so shifting weight as to make trouble in different bones of the spine; that disability was not the result of the fall from the crane.

There being a direct conflict in the testimony of experts on the traversed allegation that plaintiff suffered a compensable injury as a result of the accident, the determination of the ultimate fact from a scientific standpoint becomes a difficult problem. Circumstances and expressed or implied reasons for the opinions of experts in view of the entire record may determine the issue. In a recent case the following rule was announced:

"Cogent reasons and circumstances that strengthen the opinion of expert witnesses as to a scientific fact in issue and tend to weaken opposite expert opinions may determine the issue." *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 124 Neb. 347, 246 N. W. 734. See, also, *Sherman v. Great Western Sugar Co.*, 127 Neb. 505, 255 N. W. 772.

In the present case plaintiff himself testified that two vertebræ in his spine fused as a result of an accident in 1920 and caused total disability which terminated in 1927 —evidence of arthritis in his spine long before his alleged injury in 1934. Defendant introduced evidence of adjudications that plaintiff was totally and permanently disabled as a result of his injury in 1920 and that he was awarded compensation for life but satisfied the judgment therefor by a lump-sum settlement in 1927. See *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609, 197 N. W. 615.

Among reasons for the expert opinion that the later accident did not bring about the present condition of plaintiff are the following:

If there had been a fracture of the lamina, disabling pain would soon have occurred. Hard work continuously for six months or more after the accident in 1934 indicated there was no fracture of the lamina. An impingement of the nerve there would have interfered with articulation of the neck which has good motion. Impingement of the nerve would have disturbed muscular movement of the left arm which is free. Severe headaches and disability came too late to be attributable to the later accident. Infected teeth and arteriosclerosis account for dizziness. The crack in the neck was more likely due to arthritis than to a fracture. Worry over the loss of a job and pain in the back were sufficient causes of loss of appetite, loss of sleep and loss of weight. Disability would have occurred sooner, if attributable to reactivity of dormant arthritis.

The weight of circumstances, the probative effect of the evidence and the cogency of the reasons for the opinions of defendant's experts preponderate in favor of the defense

and defeat the claim of plaintiff. The conclusion is that plaintiff did not prove by a preponderance of the evidence that he suffered by his fall from the crane a compensable injury arising out of and in the course of his employment. In view of this finding on the controlling issue in the case, other questions are immaterial, though ably presented at the bar and in the briefs.

AFFIRMED.