WILLIAM DONKER, APPELLEE, v. CENTRAL WEST PUBLIC SERVICE COMPANY ET AL., APPELLANTS.

280 N. W. 168

FILED JUNE 10, 1938. No. 30356.

*Brown, Fitch & West* and *George W. Leamer,* for appellants.

*Bliven & McKinley, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is an appeal in a workmen's compensation case by the Central West Public Service Company, a corporation, and its insurance carrier, from an adverse finding and judgment. The judgment appealed from awarded William Donker, employee, the sum of $10.27 each week from and after January 3, 1936, for temporary total disability, for a period not to exceed 300 weeks, less, however, the amount of $10.27 each week for 17 weeks, or the sum of $174.59 previously voluntarily paid to the employee in behalf of appellants. Certain claims for medical services were also allowed.

The appeal presents a limited field for investigation. The appellants admit the employment of plaintiff, the rate of his wages, the occurrence of the accident on January 3, 1936, arising out of and in the course of his employment, and that in said accident, "plaintiff slipped and fell, causing an injury to his coccyx," and "that compensation has been paid by defendants from January 4, 1936, to May 1, 1936, at the rate of Ten and 27/100 Dollars ($10.27) per week." So, the only questions for determination are the extent of the injuries then received by plaintiff and the nature of the disabilities occasioned thereby.

The plaintiff, a man of 46 years of age and weighing a little less than 200 pounds at the date of the accident, had been employed by the Central West Public Service Company at Crystal Lake, Dakota county, Nebraska. He was engaged in running an "ice marker." He testified that on this day, January 3, 1936, "turning around in the ice marker, I went to pull back on it to line it up; and when I pulled back my feet went out from under me and I fell," that he lit on his body, "a little ways above my hips," and "somewhere near the small of the back." Further, that he could not get up at first and lay there awhile; that he then got up but found he could not continue his work; that his legs got kind of numb and there were pains in his legs and back; that he walked around for a while and tried to continue his work but found he could not;

that his foreman on the ice then sent him to the tool house, where the company timekeeper then dressed a superficial wound he had received on one of his legs, then called a car from the plant over at Sioux City, and took him over to Dr. Charles Katherman of Sioux City; that this doctor treated him for six or seven weeks, and his pains continued, and on April 12, 1936, Dr. Katherman operated on plaintiff and removed the coccyx, and continued to care for him until the last week of April, 1936, when plaintiff was informed by this doctor that all had been done for him that could be done, and that "he was going to release" plaintiff. This doctor then advised plaintiff to do something by way of exercise that would limber up his limbs. At that time plaintiff had a burning sensation up and down his spine that never left him. His "legs were numb and felt like a lot of needles were sticking in my leg— asleep like." About May 20, 1936, plaintiff employed Dr. Graham of Sioux City, Iowa, who prescribed a brace for the lower part of the body, and treated him until about August 19, 1936. Plaintiff's pains continued and he seemed to be growing worse, and Dr. Graham also prescribed exercises, but the effect of taking them was to "put me all in." Plaintiff then entered the Veterans' hospital in Lincoln, where, under the personal charge of Dr. H. Winnett Orr of Lincoln, Nebraska, he was treated from the 19th of August to the 3d day of November, 1936. Here plaintiff's tonsils were removed and some teeth were extracted. He was kept in a cast for five weeks and then given a brace to wear, which he still uses continuously, and without which he is largely deprived of control of the lower part of his body. He was released from the Veterans' hospital on November 3, 1936. At the trial plaintiff testified, viz.: "I haven't got much use of my limbs, and have that burning sensation of the spine, and those places on the back, and my hip pains me all the time." My legs are "still numb. My left leg is worse than the right one. There isn't much feeling in it." So far as exercise is concerned, plaintiff attempts to walk up town and back, once a day, ten blocks altogether. He can do no more now.

Later plaintiff employed Dr. Neil of Sioux City, who continued to care for him up to the date of the trial in the district court. During the month preceding the trial, he returned to Lincoln and was examined by Dr. Orr.

Plaintiff testifies that prior to this accident of January 3, 1936, he engaged in "all kinds of manual labor, shoveling coal, digging basements, hauling dirt, stacking hay, and all such work as that," and that he never had any trouble with his back before. Even when he worked all day shoveling coal, he testifies that prior to this accident he never experienced any pain or discomfort in his back. As to plaintiff's physical condition prior to January 3, 1936, this testimony is not only without contradiction, but is fully corroborated by witnesses who knew plaintiff and worked with him for as much as fifteen years last past.

The testimony of Dr. H. Winnett Orr of Lincoln, Nebraska, who had charge of plaintiff and who personally supervised the treatment given him at the Veterans' hospital at Lincoln, and who gave him an examination during the month preceding the trial in the district court, is, in part, as follows: "Q. Doctor, assuming that this man, William Donker, is engaged in manual labor, would you have an opinion as to the extent of his disability, if any, existing at this time? Will you answer yes or no? A. Yes. Q. What is your opinion? A. My opinion is that he is totally disabled for manual labor. Q. Would you have an opinion as to whether that is permanent or temporary? A. Yes; I have an opinion. Q. What is your opinion? A. I think he will not recover sufficiently to ever do manual labor again. I think it is permanent, in other words."

As to the condition of the lower spine, all the experts testifying conclude that at present the situation of the fifth lumbar vertebra is not normal. As to this condition, Dr. Orr also testified, in part, with reference to an X-ray picture concerning which he was then being cross-examined, viz.: "Now this vertebra, the fifth lumbar vertebra, the front edge should fit exactly to the front edge of this (indicating). Instead of that this (indicating) has slipped

forward about half an inch. Q. When you said should fit with the front edge of this? A. This (indicating) should come right down here. * * * Q. And the second 'this' was— (interrupted) A. The edge of the sacrum. Q. In other words the front edge of the fifth vertebra should be just in line, in line and above the front edge of the sacrum? A. That is right. They are somewhat out of line and the space between the two is wider than normal. That condition he may have had before the injury or may have been aggravated by the injury or entirely caused by the injury. We cannot be sure about that a year and half afterwards. But theoretically it was a condition he had before and exaggerated by the injury. That is what we usually find."

Dr. C. W. Neil, who has been acquainted with plaintiff for fifteen years, and has been his attending physician since plaintiff's release from the hospital, and who had treated him professionally many times prior to the accident in suit, testified, from the results of examinations made, including the use of X-ray plates, and his previous knowledge of plaintiff's condition, that the accidental fall suffered by plaintiff on January 3, 1936, would be sufficient to cause the injuries from which he is suffering, and that his opinion is that plaintiff's present disabilities are due wholly and entirely to that fall, and that he is totally and permanently disabled.

With the conclusion thus stated, the evidence of defendants' experts conflicts, both as to the existence of reasons stated as foundation therefor and the ultimate facts established by the testimony. It would unduly extend this opinion to abstract this evidence.

We are cited to this principle of construction, viz.: "Cogent reasons and circumstances that strengthen the opinion of expert witnesses as to a scientific fact in issue and tend to weaken opposite expert opinions may determine the issue." *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 124 Neb. 347, 246 N. W. 734. See, also, *McGuire v. Kansas City Bridge Co.*, 132 Neb. 1, 270 N. W. 669.

It is also true that, "Where the evidence is conflicting and cannot be reconciled, this court, upon a trial *de novo* in a workmen's compensation case, will consider the fact that the district court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others." *Cunningham v. Armour & Co.*, 133 Neb. 598, 276 N. W. 393. See, also, *Southern Surety Co. v. Parmely*, 121 Neb. 146, 236 N. W. 178; *Sherman v. Great Western Sugar Co.*, 127 Neb. 505, 255 N. W. 772.

Bearing in mind these principles of construction, from the evidence as an entirety we arrive at the conclusion that the findings of the district court that plaintiff is now suffering from at least temporary total disability are clearly established and in accord with the facts.

It is undisputed in this record that prior to January 3, 1936, plaintiff was an able-bodied laborer, capable of continuously performing hard work without ill effects. No new element, so far as shown by proof in the record, has entered into the situation. But since that date his condition has been markedly and continuously changed. This sudden change of physical condition must be due to some cause. The only explanation which the testimony of defendants' witnesses suggests is that plaintiff is a malingerer. But the evidence in the record preponderates against that conclusion. Besides, plaintiff and all of his witnesses save one, and all of defendants' witnesses save one, appeared in person and testified at the trial in the district court. The trial judge, from the conduct and demeanor of these witnesses on the witness-stand, and their manner of testifying in his presence, had a better opportunity for determining their credibility than has this reviewing court. This fact, under the limitations expressed in the authorities we have hereinbefore cited, is to be considered by this court in view of the conflicting nature of the testimony found in the record.

Taking into consideration all the proofs in the record, and interpreting the same in the light of all the attendant

circumstances disclosed, and the clear course of the events, we arrive at the conclusion that the findings and judgment of the trial court are in strict accord with the established facts of the transaction and are supported by ample proof.

It follows that the judgment of the district court is, in all respects, correct, and it is

AFFIRMED.