ROY WELSH, APPELLEE, v. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

282 N. W. 385

FILED NOVEMBER 10, 1938.   No. 30386.

*Beeler, Crosby & Baskins* and *Robert B. Crosby*, for appellant.

*Beatty, Maupin, Murphy & Derry*, contra.

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

ROSE, C. J.

This is a suit in equity for an injunction and for damages.

Roy Welsh, plaintiff, owns and operates a farm and cattle ranch about a mile in length on or along the south bank of the North Platte river six and one-half miles north and three-fourths of a mile or more east of Ogallala, Keith county. In addition to improvements, the ranch consists of 184 acres of deeded lands and approximately 180 acres of accreted lands in the form of islands or towheads extending lengthwise in the basin of the river which flows eastward.

Platte Valley Public Power and Irrigation District, defendant, is a public corporation with power to construct dams and to condemn lands for reservoirs in furtherance of the purposes indicated by its name. Three miles below plaintiff's ranch, defendant constructed across the North Platte river a concrete diversion dam 1,200 feet long and 9 feet higher than the bottom of the stream. The dam and dikes along the banks of the river create a reservoir extending westward approximately a mile and a half. The west end of the reservoir where it meets the flow of the river is about a mile and a half east of the east line of plaintiff's ranch. There are ample sluice gates for the passage of impounded waters and the ordinary flow of the river through the dam into the natural channel. Flood waters, if over 9 feet above the bottom of the river, run

over the crest of the dam. When the reservoir is full, open weir gates near the south end of the dam two and one-half feet below the crest divert river waters into a canal to defendant's Sutherland reservoir for the purposes of irrigation, power and light.

For the first time defendant began to impound water in the reservoir November 30, 1935, by closing the sluice gates. Between December 5 and 12, 1935, the accreted lands of plaintiff and a portion of his deeded lands were covered with water and ice.

In the petition it is alleged in substance, among other things, that the dam and the reservoir, under existing climatic conditions, caused a jam of slush ice which backed up the river beyond the premises of plaintiff, flooding his lands and thus causing damages. There is a further allegation that the wrongs of which plaintiff complains will be repeated unless he is protected by injunction for which he prays. He also prays for the recovery of damages for the total destruction of crops for the year 1935 and for the loss of the use of the flooded premises for 1935 and for 1936 prior to April as results of the flood in December, 1935. He enumerates the damages thus: Clover, grass and forage destroyed, $2,175; loss of shelter for cattle in brush and timber, $650; increased expense of moving cattle from flooded feed lot and feed and care elsewhere, $300; fencing loss, $100; stacked hay destroyed, $80; loss of the use of feed lot and consequent exposure of grain-fed cattle, $500.

In an answer pleading defenses in detail, defendant alleged it constructed and operated its diversion dam and reservoir pursuant to and under authority of law without any negligence whatever and denied that its completed and operated diversion project caused the ice jam or flood which submerged property of plaintiff three miles above the dam and a mile and a half above the west end of the reservoir. The alleged facts constituting defenses were put in issue by a reply containing a general denial.

The trial court found the issues in favor of plaintiff, enjoined defendant from so operating its dam and reservoir

as to flood plaintiff's land and rendered a judgment in favor of plaintiff for damages of $1,000. Defendant appealed from the judgment in its entirety and plaintiff took a cross-appeal from the judgment for damages as inadequate.

Defendant had authority to construct and operate its diversion dam. In construction and operation there was no negligence. Plaintiff so concedes. It is equally clear that in the normal and ordinary flow of the river the dam would not back water onto plaintiff's land. Defendant argues as ground of reversal, therefore, that the owner of a dam is not liable for damages caused by an ice jam which backs water onto lands of an upper riparian owner, if the dam would not have that effect in the usual and ordinary flow of the stream, citing cases. The applicability of this doctrine, if sound, to the present case need not be determined herein, if defendant did not cause or contribute to damages of which plaintiff complains.

The cause of the ice jam was a vital issue in the case. The decision below was adverse to defendant. The appeal presented the case for trial *de novo* without reference to the findings of the district court. Defendant relies on the rule of law stated to establish error, but that does not preclude examination of the evidence to ascertain, if possible, the controlling fact in the case. The burden was on plaintiff to prove by a preponderance of the evidence that defendant caused or contributed to the forming of the ice jam resulting in damages of which complaint is made. Did plaintiff make a case for injunction or damages? There was in fact in December, 1935, an ice jam in the North Platte river which backed up the stream westward far beyond the ranch of plaintiff. His accreted land and a few acres of his deeded land were submerged. Physical processes, phenomena and hydraulics are necessarily involved in the inquiry.

Plaintiff and other witnesses testified to their observations of the flooded area from different places and said in effect that there was a sheet of smooth ice on the water of

the reservoir and rough ice in the jam; that the slush ice and ice floes had formed in a river-wide jam of rough ice extending westward up the river from the west edge of the reservoir for miles beyond plaintiff's ranch; that slush ice and ice floes had lodged at or near the sheet of smooth ice on the reservoir and that still water, silt and smooth ice there caused the jam and resulting damages. This is the substance of testimony and the opinion expressed in voluminous detail by witnesses for plaintiff. A capable surveyor and hydraulic engineer testified to the same effect and expressed the opinion that freezing temperature, high water, deposits of silt, floating ice, obstruction of still water and smooth ice at the west edge of the reservoir combined to create the jam there that backed up the river several miles and inundated plaintiff's islands. On the issue as to the place and cause of the damaging ice jam, there is nothing in the record to indicate that witnesses for plaintiff did not testify conscientiously.

There is, however, testimony of a different import. There is evidence tending to prove that, before defendant's reservoir was constructed, plaintiff's island and towheads were subject to small ice jams and overflows but that none of them had ever equaled the flood in December, 1935. It was unusual. Plaintiff admitted on the witness-stand that his accreted land in the form of islands and towheads had been previously flooded and that flood water once ran through his meadow land without causing material damage.

In the instance under consideration, P. F. Conroy, a surveyor and engineer familiar with the North Platte river in Keith county, inspected the flooded area and surveyed it shortly after the flood, noting altitudes, distances and general conditions. His technical data shows that, at the east end of plaintiff's ranch, the river is 9 feet higher than the crest of defendant's diversion dam, and that farther up the river at the west end of plaintiff's ranch the river is more than 15 feet above the crest of the dam. Conroy testified to these and other obstructions, to physical facts, to observations and conditions indicating the location of

the ice jam that inundated lands of plaintiff. He expressed opinions to the effect that the jam which backed up on plaintiff's ranch was just east and immediately north of his lands; that it was caused by slush ice lodging on islands, towheads and other obstructions, thus turning the currents from regular channels toward the outer banks of the river and forming a jam across the river; that defendant's diversion dam had nothing to do with the flooding of plaintiff's land. Physical facts and conditions on which these opinions were based were stated in detail by the witness who gave reasons for his conclusions.

Eugene Halmos, designing engineer for defendant's diversion dam, also testified as an expert. He was obviously familiar with the work of its construction and of the surroundings. He considered the facts disclosed by the survey made by Conroy after the flood. He listened to witnesses who were of opinion that the ice jam that flooded lands of plaintiff formed at the west end of the reservoir, but was of opinion that a complete barrier across the river there was not possible in view of the established fact that water in vast quantities passed through the reservoir from the river during the entire flood. Halmos also expressed the opinion that the ice jam that caused the flow on plaintiff's land originated farther up the river at the west end of McGinley island and at plaintiff's accreted lands. The facts on which this opinion was based were stated by the witness in detail as shown by the survey and other evidence and surrounding circumstances. In support of his opinion he gave reasons that weakened expert testimony of a different import. The islands and towheads among the narrow channels of the river north of plaintiff's deeded land were natural obstructions. Slush ice and ice floes in the swollen stream would naturally reach those obstructions before floating ice would collide with the smooth sheet of ice on the reservoir two miles or more below. The evidence is that these islands were covered with ice. A rule of evidence reads as follows:

"Cogent reasons and circumstances that strengthen the

opinion of expert witnesses as to a scientific fact in issue and tend to weaken opposite expert opinions may determine the issue." *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 124 Neb. 347, 246 N. W. 734; *McGuire v. Kansas City Bridge Co.*, 132 Neb. 1, 270 N. W. 669.

On the whole case, viewed in the light of the entire record, the evidence preponderates in favor of defendant on the vital issue. Plaintiff did not sustain the burden of proof on that issue or make a case for either injunction or damage. The judgment of the district court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.