JOHN THIES, APPELLEE, v. PLATTE VALLEY PUBLIC POWER
AND IRRIGATION DISTRICT, APPELLANT.
289 N. W. 386
FILED DECEMBER 20, 1939. No. 30517.

*Beeler, Crosby & Baskins* and *Robert B. Crosby,* for appellant.

*Halligan, McIntosh & Halligan, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and CHAPPELL, District Judge.

JOHNSEN, J.

This is an action for damages to plaintiff's leasehold estate from a flood due to an ice jam, alleged to have been occasioned by defendant's diversion dam and reservoir in the North Platte river in Keith county. A jury returned a verdict in favor of plaintiff for $822.25, and, from the judgment entered thereon, defendant has appealed.

The case is a companion case to *Welsh v. Platte Valley Public Power and Irrigation District,* 135 Neb. 441, 282 N. W. 385, in that it arises out of the same flood. In the *Welsh case,* which was a suit in equity for an injunction and for damages, tried *de novo* in this court, we held that plaintiff had failed to establish by a preponderance of the evidence that the diversion dam and reservoir were the proximate cause of the flood. We accordingly reversed a judgment for plaintiff and dismissed the suit. In this case, which is an action at law for damages, where the weight of the evidence is a matter for the jury and not for us to determine, we are concerned simply with whether there is substantial evidence in support of plaintiff's claim. The question therefore is, not what result we might have reached if we were trying the case *de novo,* but whether there is sufficient evidence to warrant submission of the question of proximate cause to a jury.

From a careful reading of the record, we are obliged to hold that there is. There is evidence on behalf of plaintiff to show that defendant had closed the gates of the dam, for the first time since its construction, about a week before the flood, and that the reservoir thereby became filled with

shallow water, which froze and checked the flow of slush ice through the river, causing it to accumulate and push the water backward, until it ultimately reached and flooded plaintiff's leasehold. There is testimony by eyewitnesses from the neighborhood that they saw the slush ice start piling up and commence to freeze at the dead water line of the reservoir and watched it gradually work backward and push the water over the surrounding lands for a distance of approximately two and a half miles. A qualified engineer testified that, in his opinion, the freezing of the dead, shallow water which had been admitted into the reservoir and the obstruction created thereby to the normal channel flow were the proximate cause of the flood. The record contains further testimony indicating that such a slush ice jam in the fall of the year was unknown in the river prior to the construction and operation of the diversion dam and reservoir. There is other evidence, also, disputing defendant's contention that the diversion dam and reservoir were in no way a causal factor, but that the flood was due solely to towheads and other obstructions in the river and to general weather conditions. We shall not attempt to detail the evidence of defendant or to compare its weight with that produced by plaintiff, for, as has been sufficiently indicated, there was substantial and credible evidence to support plaintiff's contention, and in this situation, irrespective of our personal views, the question of its weight and of plaintiff's right to recover was wholly for the jury.

Defendant contends that plaintiff was in no event entitled to recover for the damages to that portion of his leasehold that consisted of accretion lands in the old river bed, for the reason that all property interests in such lands must be held to be subservient to the use of the bed of the river for public purposes. The state does not hold title to the river beds in Nebraska. *Kinkead v. Turgeon,* 74 Neb. 580, 109 N. W. 744. Such river beds are as effectually the subject of private ownership as other property, except that, in the case of navigable streams, there is an easement for public navigation. "The interest of the public in the waters and

bed of a navigable river is analogous to that of the public in a public road. It has the right of passage over the stream as it has over the road. * * * When by reason of natural changes the stream abandons the bed over which, through the instrumentality of its waters, the public had the right to pass, the right of passage is as effectually abandoned at that point as when a road is vacated and a new one opened to take its place. The right of the public is to travel in the new road, and its right and privilege to pass over the old one revert to the abutting owners; and so with the river, the public right of navigation attaches to the new channel of the stream by virtue of the change of its waters, over which alone the right of navigation can exist, and the abandoned bed, which is of no avail for public use as a means of travel, reverts to the riparian owners to the thread of the channel where the waters flowed." *Kinkead v. Turgeon, supra.* The title of an abutting owner to the accretions to such land is similarly absolute. *Conkey v. Knudsen,* 135 Neb. 890, 284 N. W. 737. It follows that under section 21, article I of our Constitution, an interest in accretion lands, like other property, cannot be taken or damaged for public use without just compensation.

Defendant contends, as a further ground for reversal, that since plaintiff's petition was filed on December 20, 1935, he was entitled to recover such damages only as had accumulated to that date, but that the trial court allowed him to prove and recover damages to March 1, 1936, the date his leasehold expired. This argument overlooks the fact that the diminution in value of plaintiff's leasehold occurred immediately at the time of the flood, and hence the fact that the leasehold ran beyond the date of the institution of suit did not make it an attempt to recover damages which had not yet accrued. The principal elements of damage shown were the destruction of hay and other feed by the inundation, and a deprivation of the use of the land, with its trees and brush, for winter shelter and pasture. The destruction and deprivation were complete and unmitigable from the date of the flood, and hence plaintiff's

damages were definitely fixed as of that time. It was not necessary to wait until the expiration of the leasehold to determine the extent of its diminution in value. Defendant's contention is therefore without merit.

It is further contended that the trial court erred in allowing plaintiff to file an amended petition, over defendant's objection, because it set up an entirely new cause of action and was between different parties than the original petition. The record shows that plaintiff and the owner of the land originally joined in a suit to enjoin defendant from maintaining its diversion dam and to recover damages. Later the action was dismissed as to the owner of the land, and plaintiff filed an amended petition for damages only. The damages which he sought to recover were the same as those which he claimed in the original petition. The order of the trial court permitting the filing of the amended petition was within the authorization of section 20-809, Comp. St. 1929, and, even without the statute, it would not have constituted an abuse of discretion. Procedure must be made as simple a vehicle as possible for direct approach to and prompt and orderly dispatch through the courts.

We find no error in the proceedings of the trial court.

AFFIRMED.